Case 6:22-cv-00067-RSB-CKM   Document 23   Filed 02/14/24   Page 1 of 14
Pageid#: 18614

CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

2/14/2024

LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| DIONNE S.,[1] | ) |
|  | ) Civil Action No. 6:22-cv-67 |
| Plaintiff, | ) |
| v. | ) REPORT & RECOMMENDATION |
|  | ) |
| MARTIN O'MALLEY,[2] | ) By: C. Kailani Memmer |
| Commissioner of Social Security, | ) United States Magistrate Judge |
|  | ) |
| Defendant. | ) |

Plaintiff Dionne S. ("Dionne"), proceeding *pro se*, filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Dionne alleges that the Administrative Law Judge Anthony Johnson, Jr., ("ALJ") erred by failing to properly weigh her treating physician's opinion.

This case is before me on referral pursuant to 28 U.S.C. § 636(b)(1)(B), dated October 10, 2023. ECF No. 22. Dionne did not request oral argument in this case. *See* ECF No. 18. Having considered the administrative record, the parties' filings, and the applicable law, I find that the Commissioner's decision is not supported by substantial evidence.

Accordingly, and for the reasons detailed below, I respectfully recommend **GRANTING** Dionne's Motion for Summary Judgment, ECF No. 18; **DENYING** the Commissioner's Motion

---

[1] Due to privacy concerns and because social security opinions often contain intensely personal medical information about claimants, I use only the first name and last initial of the claimant in such opinions.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

for Summary Judgment, ECF No. 21; **REVERSING** the Commissioner's final decision denying Dionne's SSI claim; **REMANDING** the matter under the fourth sentence of 42 U.S.C. § 405(g); and **DISMISSING** this case from the Court's active docket.

## STANDARD OF REVIEW

The court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Dionne failed to demonstrate that she was disabled under the Act.[3] *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). While substantial evidence is a somewhat deferential standard, the Court does not "reflexively rubber-stamp an ALJ's findings." *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017).

"In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro*, 270 F.3d at 176 (quoting *Craig v. Chater*, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its]

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period for not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work; instead, a claimant must show that her impairments prevent him from engaging in all forms of substantial gainful employment given her age, education, and work experience. *See* 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. *Hays v. Sullivan*, 907 F. 2d 1453, 1456 (4th Cir. 1990).

In contrast, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" where the court is "left to guess [at] how the ALJ arrived at his conclusions"). The ALJ must sufficiently articulate his findings such that the district court can undertake meaningful review. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

## **CLAIM HISTORY**

Dionne filed for SSI in October 2016, claiming her disability began on September 20, 2016 due to twenty-five medical conditions. R. 5102. The Commissioner denied Dionne's claim initially and on reconsideration. R. 16, 110–13. On December 1, 2021, Dionne requested a hearing before an ALJ. R. 123–24. On February 18, 2022, Dionne appeared before the ALJ by telephone. R. 5141–73. Nitan Paul Dhiman, M.D., testified as a medical expert and identified the following medically determinable impairments for Dionne: asthma; diabetes mellitus; high blood pressure; coronary artery disease; gastroesophageal reflux disease ("GERD"); osteoarthritis; hyperlipidemia; a history of neuroendocrine tumor; bilateral carpal tunnel syndrome; edema; irritable bowel syndrome; and obesity. R. 5146. Denise Cordes testified at the hearing as an impartial vocational expert. R. 5167–72. The ALJ issued an "Unfavorable Decision" analyzing

3

Dionne's claim under the familiar five-step process[4] on April 7, 2022, and denied Dionne's claim for benefits. R. 5099–5125.

At the first step, the ALJ found that Dionne had not engaged in substantial gainful activity during the period since October 13, 2016, the application date. R. 5105. At the second step, the ALJ found that Dionne has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; arthritis of the right shoulder, status post rotator cuff repair; bilateral carpal tunnel syndrome; ileal neuroendocrine tumor, status post resection, with residual symptoms; irritable bowel syndrome; GERD; fatty liver disease; chronic Helicobacter pylori gastritis; asthma; obesity; major depressive disorder; and generalized anxiety disorder. *Id.*

As to the third step, the ALJ found that Dionne's impairments, either individually or in combination, did not meet or equal a listed impairment. R. 5107. The ALJ specifically considered Listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root, 1.18 (abnormality of a major joint in any extremity), 3.03 (asthma), and 5.05 (chronic liver disease). R. 5107–09. Additionally, while there is no listing for obesity, the ALJ considered Dionne's obesity in the context of the overall record. R. 5109. The ALJ found that Dionne has moderate limitations in understanding, remembering, or applying information; interacting with

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. *Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1520); *Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a *prima facie* case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. R. 5109–10.

The ALJ concluded that Dionne has the RFC to:

> Perform light work as defined in 20 C.F.R. § 404.967(b) except she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She cannot climb ladders, ropes, or scaffolds. She cannot work around hazards, such as unprotected heights and moving machinery. She can tolerate occasional exposure to extreme heat or cold, wetness, humidity, and respiratory irritants, such as dusts, odors, gases, and fumes. She can perform reaching frequently, and she can handle, finger, and feel frequently. She can understand, remember, and carry out simple and routine instructions, and concentrate on work-related tasks for two-hour periods. She can interact with the public, coworkers, and supervisors occasionally. She can perform non-production pace, non-assembly line pace jobs that involve occasional workplace changes that are introduced gradually over time, occasional independent decision making, and no responsibility for the safety of others.

R. 5111.

At step four, the ALJ found that Dionne had no past relevant work. R. 5123. At the fifth step, the ALJ identified jobs in significant numbers in the national economy that Dionne could perform, including positions as a cafeteria attendant, housekeeping cleaner, and optical lens matcher. R. 5124. Thus, the ALJ determined that Dionne was not disabled. *Id.* The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Dionne's request for review on October 14, 2022. R. 5092–95.

## ANALYSIS

Dionne argues that the ALJ erred by failing to acknowledge any treating physician's opinion and assigning it the proper, controlling weight under the applicable "treating source" rule. ECF No. 18 at 3.

### A. Medical History Overview

Dionne was born on March 3, 1980. R. 5123. She has a limited education and has previously worked as a cafeteria attendant. *Id.* Dionne has a medical history that involves

5

extensive complaints of various physical conditions. Her primary complaints relate to neck, back, hand, shoulder, and other musculoskeletal pain.

In February 2016, Joyce Heurta, M.D., completed a Virginia Department of Medical Assistance Services form. R. 4445. She diagnosed Dionne with wrist pain and concluded that Dionne had limited mobility but did not have restricted activity or require assistance with her activities of daily living. *Id.*

In January 2017, Juliana Frosch, PMHNP, completed a mental capacity evaluation. R. 2158–60. Ms. Frosch found Dionne had the following limitations: slight limitations in the ability to remember locations and work-like procedures; slight limitations in the ability to understand and remember detailed instructions; slight limitations in the ability to carry out detailed instructions; slight limitations in the ability to maintain attention and concentration for extended periods; marked limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; marked limitations in the ability to sustain an ordinary routine without special supervision; slight limitations in the ability to work in coordination with or in proximity to others without being distracted by them; slight limitations in the ability to make simple work-related decisions; slight limitations in the ability to complete a normal workday without interruptions from psychologically based symptoms; moderate limitations in the ability to complete a normal workweek without interruptions from psychologically based symptoms; slight limitations in the ability to accept instructions and respond appropriately to criticism from supervisors; moderate limitations in the ability to respond appropriately to changes in the work setting; and moderate limitations in the ability to set realistic goals or make plans independently of others. *Id.* Additionally, Ms. Frosch indicated that Dionne would likely have "4+" absences in an average month. R. 2159.

6

In February 2017, Dionne reported to the emergency room at Centra Lynchburg General Hospital in Lynchburg, Virginia, after she was injured in a motor vehicle collision. R. 2404. She complained of back pain and chest palpitations. *Id.* Physical examination revealed some tenderness in Dionne's back and a normal range of motion in her extremities. R. 2407–08. The treating doctor diagnosed Dionne with strain of her thoracic paraspinal muscles and instructed her to follow-up with her primary care provider. R. 2708.

After the February 2017 motor vehicle collision, Dionne began a regimen of physical therapy at Centra rehabilitation. R. 4631–50. On initial evaluation, Dionne was diagnosed with bilateral shoulder pain and generalized muscle weakness, and her physical therapist noted strength and range of motion deficits in her upper extremities. R. 4634. Dionne was discharged after several weeks, and her physical therapist noted that while Dionne did suffer continuing weakness and difficulty pulling and lifting, she did also demonstrate objective improvement. R. 4648–50.

In January 2016, February 2017, and June 2017, Teodora Brose, M.D., one of Dionne's treating physicians, authored three separate medical opinions. R. 495–96, 2630–31 (January 2016); 2174 (February 2017); 2345–46, 2443–44 (June 2017). In 2016, Dr. Brose opined that Dionne's symptoms would often interfere with her attention and concentration, that she would need to take very frequent, unscheduled breaks, and that she would be absent from work more than four times a month. R. 495–96, 2630–31. In February 2017, Dr. Brose opined that Dionne could "perform work that is not physical in nature for less than 2 hours per day if frequent breaks would be allowed." R. 2174. In June 2017, Dr. Brose opined that Dionne could participate in employment activities for 19 hours per week and cannot lift more than 15 pounds. R. 2345–46, 2443–44.

7

In September 2017, Dionne returned to the care of Shveta Tiwari, M.D., with complaints of neck pain. R. 2970. Dr. Tiwari found Dionne had decreased and painful range of motion in her shoulder and recommended an ultrasound, which was negative for masses. R. 2972, 3217.

In both 2017 and 2018, Dr. Tiwari authored multiple medical opinions. R. 2441–42 (June 2017); 4191 (March 2018); 4192–93, 4197–201 (February 2018). In June 2017, Dr. Tiwari opined that Dionne could participate in employment for up to 19 hours per week, that she could not lift more than 15 pounds, and that she has difficulty with overhead lifting. R. 2441. In February 2018, Dr. Tiwari opined that Dionne is unable to participate in employment and training activities in any capacity. R. 4194. Dr. Tiwari indicated that Dionne cannot lift more than 15 pounds and had difficulty lifting overhead, and that Dionne could stand less than two hours in an 8-hour workday and sit about six hours in an 8-hour workday. R. 4195, 4198. In March 2018, Dr. Tiwari's opinion was the same as that expressed in her June 2017 opinion. R. 4191.

In August 2017, Wyatt Beazley III, M.D., a state agency physician, reviewed the medical record available at that time and found Dionne capable of a limited range of light work, with certain exertional and postural limitations but no manipulative or environmental limitations. R. 120–23. That same month, Jo McClain, Psy.D., likewise reviewed the record and found that Dionne had no mental limitations. R. 118.

In December 2017, Dionne attended an orthopedic appointment for evaluation of right shoulder pain. R. 3224. Her orthopedist assumed Dionne suffered a muscle strain, noting that there was no evidence of fracture or degenerative changes. While Dionne's shoulder was tender, physical exam revealed full range of motion and 5/5 strength. Her orthopedist recommended physical therapy and medication, and Dionne complied with that treatment regimen. On initial

8

evaluation, Dionne had reduced range of motion and decreased strength; however, after several appointments, Dionne's provider observed that she made therapeutic gains.

In February 2018, Catherine Twimasi, M.D., referred Dionne to physical therapy for a functional assessment. R. 4671. On exam, the physical therapist found that Dionne was moderately impaired in her upper extremities, noting impairments in her proximal and cervical range of motion and grip strength. R. 4675–76. The physical therapist found less lower extremity limitations, noting that testing revealed Dionne's lower extremities were generally within the functional standards. *Id.*

In March 2018, David Bristow, M.D., a state agency physician, reviewed the record and found Dionne capable of medium work, with certain exertional, postural, and environmental limitations but no manipulative limitations. R. 150–55. That same month, Andrew Bockner, M.D., reviewed the record and found Dionne had no limitation in her ability to adapt or manage herself but mild limitations in her ability to understand, remember, or apply information, interact with others, and concentrate, persist, or maintain pace. R. 147.

Dionne continued to complain of neck and back pain throughout 2018, and in August 2018, Dr. Tiwari again referred Dionne for physical therapy. R. 4730–33. In September 2018, Dionne began a regimen of physical therapy. On initial evaluation, Dionne demonstrated decreased range of motion and decreased upper extremity strength. R. 4678–80. On discharge, Dionne's physical therapist noted that while Dionne had gained some mobility and upper extremity strength on the right, she still retained some weakness. R. 4681–714.

Dionne continued to complain of neck, back, shoulder, and other musculoskeletal pain throughout 2019. *See* R. 4784, 4810, 4836. Physical examination revealed a normal gait and

9

station and 5/5 strength in her lower extremities. Her provider, Patrick Parks, PA-C, referred her to physical therapy for her back pain. R. 4810.

In addition to her musculoskeletal pain, Dionne also consistently complained of migraines and headaches throughout the relevant period. In December 2016, Dionne presented to the emergency room at Lynchburg General Hospital with complaints of numbness in her left arm, chest pain, and a headache. R. 2792. In January 2017, Dionne presented to the care of Myla Goldman, M.D., with complaints of reoccurring severe headaches associated with expressive aphasia, visual disturbances, nausea, and vomiting. R. 2245–46. Dr. Goldman started Dionne on 400 mg of magnesium daily. R. 2250.

In January 2018, Dionne presented to the emergency room at Lynchburg General Hospital complaining of headaches, and she was diagnosed with slurred speech, numbness, and tingling. She underwent an MRI, which showed normal results. R. 3249–50.

In May 2021, Dionne underwent a rotator cuff repair, and afterwards described ongoing pain that extended down her arm. R. 5112–13. After that time, Dionne's range of motion remained slightly limited. *Id.*

At the administrative hearing in February 2022, Dr. Dhiman opined that Dionne could lift and carry 20 pounds occasionally; lift and carry 10 pounds frequently; sit and stand and/or walk for 6 hours each in an 8-hour workday; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; could not climb ladders, ropes, or scaffolds; should avoid working on unprotected heights, heavy machinery, and vibrations; frequently reach, handle, finger, and feel; and tolerate occasional exposure to extreme temperatures, wetness, humidity, and pulmonary irritants. R. 5146–47.

### B. The ALJ Erred by Not Properly Adhering to the "Treating Source Rule"

Dionne argues that the ALJ improperly discounted the opinions of her treating and examining medical sources. ECF No. 18 at 2–3. Dionne argues that the ALJ erred by failing to properly weigh her treating physicians' opinions. ECF No. 18 at 3.

Dionne's SSI claim was filed on November 2, 2016. R. 211. For claims filed before March 27, 2017, the rules in 20 C.F.R. § 404.1527. When reviewing whether an applicant is eligible for disability benefits, the ALJ must evaluate every medical opinion in the record "regardless of its source."[5] 20 C.F.R. § 404.1527(b)-(c). In addition, the ALJ must adhere to the "treating source rule." *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983). Under the "treating source rule," the applicant's treating physician's opinion is entitled to controlling weight in the ALJ's analysis, unless there is persuasive, contradictory evidence.[6] *Id.*

As the Fourth Circuit recently explained in *Easterbrook v. Kijakazi*, 2023 U.S. App. LEXIS at *13 (4th Cir. 2023), "[m]edical opinions from 'treating sources' are given controlling weight because 'these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the applicant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." (quoting 20 C.F.R. § 404.1527(c)).

While a treating source's opinions are entitled to controlling weight, the ALJ may determine that such opinions are not entitled to controlling weight by considering the following factors: (1) the length of the physician's treatment relationship with the claimant; (2) the

---

[5] 20 C.F.R. §§ 404.1520c, 4106.920c applies to claims filed on or after March 27, 2017, and focuses more on the "supportability" and "consistency" of treating providers' opinions.
[6] The regulation defines a "treating source" as the applicant's "acceptable medical source who provides [the applicant] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the applicant]." 20 C.F.R. § 404.1527(a)(2).

11

Case 6:22-cv-00067-RSB-CKM    Document 23    Filed 02/14/24    Page 12 of 14
                                Pageid#: 18625

physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) whether the medical evidence in the record supports the physician's opinion; (5) the consistency of the physician's opinion with the entirety of the record; and (6) the treating physician's specialization. *See Shelley C. v. Comm'r of SSA*, 61 F.4th 341, 354 (4th Cir. 2023). "**None of these factors may be omitted or disregarded** by the ALJ in weighing the value of a treating physician's opinion." *Ricks v. Comm'r*, No. 2:09-cv-622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010) (citing *Burch v. Apfel*, 9 Fed. App'x 255, 259 (4th Cir. 2001)) (emphasis added). The Fourth Circuit has explained that "mere acknowledgment of [20 C.F.R § 404.1527(c)'s six factors] is insufficient and falls short of the ALJ's duties." *Shelley C. v. Comm'r of SSA*, 61 F.4th 341, 354 (4th Cir. 2023). It necessarily follows, then, that an ALJ's failure to even provide a <u>mere acknowledgement</u> of those six factors must itself also be insufficient and fall short of the ALJ's duties.

     Here, the ALJ failed to adhere to the "treating source" rule. The ALJ's opinion includes analysis of several treating providers' opinions, including those opinions of Dr. Patel, Dr. Brose, Dr. Tiwari, Dr. Huerta. R. 5117–21. The ALJ's opinion notably does not discuss the opinion of Dr. Twimasi. The ALJ gave Dr. Patel's opinion "just some weight." R. 5119. He gave Dr. Brose's opinion "little weight." *Id.* He gave Dr. Tiwari's opinion "just some weight." R. 5120. He gave Dr. Huerta's opinion "very little weight." R. 5121. Charitably read, for each treating source's opinion, the ALJ focused only on whether the medical evidence in the record supports that treating source's opinion and whether that treating source's opinion was consistent with the entirety of the record. He did not consider the length of the physician's treatment relationship with Dionne, the physician's frequency of examination, the nature and extent of the treatment relationship, or the treating physician's specialization.

Most problematic of all, however, is that the ALJ did not even acknowledge the existence of the six factors under 20 C.F.R. § 404.1527(c), almost as though he was unaware that regulation controlled in this case. This Court is, unfortunately, left only to guess as to the reason for this failure. The Commissioner notes that Dionne's claim was filed prior to March 27, 2017. *See* ECF No. 20 at 3. However, the Commissioner seemingly fails to recognize that the "treating source rule," is applicable to this case. *See id.* at 10.

The Commissioner points to the controlling regulations for claims filed *on or after* March 27, 2017, in which ALJ's are required to consider whether a physician's opinion is supported and consistent with the record as a whole. *See id.* However, because Dionne's claim was filed in October 2016, her treating physicians' opinions are entitled to controlling weight in the ALJ's analysis. Dionne herself points out, correctly, that the ALJ's opinion contains no reference to the "treating source rule." ECF No. 18 at 3.

Here, even charitably reading the ALJ's opinion, he engages with the treating sources' opinions only through the lens of consistency of the physicians' opinions with the entirety of the record. *See* R. 5118–22. He erred by failing to consider the other factors required to determine the appropriate weight to which treating sources' opinions are entitled. *See Ricks*, 2010 WL 6621693 at *10. As stated above, this Court is left only to guess whether the ALJ understood that the "treating source rule" was applicable in this case, as he never indicated that the opinions of Dionne's treating providers otherwise would have been entitled to controlling weight, nor did he acknowledge the six factors under 20 C.F.R. § 404.1527(c). Therefore, remand is necessary in this case.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the presiding District Judge **GRANT** Dionne's Motion for Summary Judgment, ECF No. 18; **DENY** the Commissioner's Motion for Summary Judgment, ECF No. 21; **REVERSE** the Commissioner's final decision; **REMAND** the matter under the fourth sentence of 42 U.S.C. § 405(g); and **DISMISS** this case from the Court's active docket.

## NOTICE TO PARTIES

The clerk is directed to transmit the record in this case to Robert S. Ballou, United States District Judge, and to provide certified copies of this Report and Recommendation to counsel of record.

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party must serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

Entered:  February 14, 2024

*C. Kailani Memmer*
C. Kailani Memmer
United States Magistrate Judge